# UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT

**CHRISTOPHER VICK; BRIDGET BIERSMITH; RYAN RUSSELL; JOSHUA HOLMAN; JORDAN DAMEWOOD**,
*PLAINTIFFS-APPELLEES*

v.

**FRESH GREEN LLC**,
*DEFENDANT*

**VERTICAL ENTERPRISE, LLC,**
*DEFENDANT-APPELLANT*

**OXD 19341, LLC; BD HEALTH RETAIL 3, LLC; BBMO 3, LLC,**
*DEFENDANTS*

**GRASSROOTS OPCO MO, LLC**
*DEFENDANT-APPELLANT*

**NATURES HEALTH AND WELLNESS, LLC;
JOHN DOE DISPENSARIES, 1-215**
*DEFENDANTS*

*ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI (4:25-CV-00739)
(THE HONORABLE DAVID GREGORY KAYS)*

## BRIEF OF APPELLEES

Andrew Schermerhorn
SCHERMERHORN LAW, PC
4520 Main Street, Suite 700
Kansas City, MO 64111
(816) 285-6022
andy@schermlaw.com

Paul D. Anderson
POPHAM LAW FIRM
712 Broadway, Suite 100
Kansas City, MO 64105
(816) 221-2288
panderson@pophamlaw.com

<u>**SUMMARY OF THE CASE**</u>

Appellees do not believe oral argument is necessary. *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22 (2025), controls. It holds that when an amended pleading changes the parties, as here, federal jurisdiction depends on the operative amended complaint. That rule is consistent with this Court's decision in *Wullschleger v. Royal Canin U.S.A., Inc.*, 75 F.4th 918 (8th Cir. 2023).

Section 1332(d)(7) does not alter that rule. It fixes when class-member citizenship is measured; it does not freeze a superseded class definition in place. Plaintiffs here did not rely on post-removal changes in citizenship or domicile. They simply changed who they seek to represent. That is the type of amendment *Royal Canin* recognized can defeat federal jurisdiction.

CAFA's structure also supports remand. CAFA was designed to bring substantial *interstate* class actions into federal court. *Westerfeld v. Indep. Processing, LLC*, 621 F.3d 819, 822 (8th Cir. 2010). But Congress also required federal courts to decline jurisdiction over genuinely local controversies. 28 U.S.C. § 1332(d)(4). This case is local in every relevant sense: Missouri Plaintiffs bring Missouri-law claims against Missouri dispensaries to recover an unlawful Missouri tax that the Missouri Supreme Court declared unconstitutional. This case belongs in Missouri state court.

If the Court grants oral argument, Appellees respectfully request time equal to that granted Appellants.

## <u>RULE 26.1 DISCLOSURE STATEMENT</u>

All the Plaintiffs-Appellees are natural persons.

# TABLE OF CONTENTS

SUMMARY OF THE CASE ................................................................................. i

RULE 26.1 DISCLOSURE STATEMENT ........................................................... ii

ISSUES PRESENTED ........................................................................................ 1

APPELLEES' STATEMENT OF THE CASE ...................................................... 2

    A.    Plaintiffs filed a Missouri-law class action challenging Defendants'
retention of an unlawful Missouri tax. ................................................. 2

    B.    Defendants removed under CAFA, and the district court initially
allowed limited jurisdictional discovery on class-member citizenship.
................................................................................................................ 2

    C.    Plaintiffs obtained leave to file a Second Amended Complaint
narrowing the plaintiff class to Missouri citizens. .............................. 3

    D.    The district court remanded under CAFA's mandatory exceptions. ..... 4

SUMMARY OF THE ARGUMENT ..................................................................... 5

STANDARD OF REVIEW ................................................................................. 8

ARGUMENT ...................................................................................................... 9

    I.    Introduction ........................................................................................... 9

    II.    The Second Amended Complaint is the operative pleading, and
federal jurisdiction must be assessed from that pleading. ................... 13

        A.    *Royal Canin* holds that jurisdiction depends on the operative
amended complaint. ................................................................. 13

        B.    *Royal Canin* affirmed this Court's own rule in *Wullschleger*...14

        C.    The Eighth Circuit has reaffirmed the same supersession rule
after *Royal Canin*. .................................................................. 15

    III.    Section 1332(d)(7) does not freeze a superseded class definition in
place ...................................................................................................... 16

        A.    Section 1332(d)(7) is a timing rule, not an anti-supersession
rule ............................................................................................ 16

B. *Royal Canin* cited § 1332(d)(7) as an example of Congress treating amended pleadings as jurisdiction-changing events. ..20

C. Plaintiffs changed the *alleged* state of things, not the state of things. ...............................................................................25

D. Even under Appellants' reading, the Original Petition—not the First Amended Petition—was the first pleading indicating federal jurisdiction. ................................................................32

IV. *Hargis* and *Hargett* do not control after *Royal Canin*.........................33

A. Hargis involved the amount in controversy, not the operative class definition for CAFA's mandatory exceptions...................33

B. Hargett's "seems to violate" observation was not a post-*Royal Canin* holding.........................................................................34

C. *In Touch Concepts* and similar pre-*Royal Canin* authorities do not carry Appellants' burden. ...................................................35

V. *Royal Canin* applies to CAFA despite CAFA's unique features. ........36

VI. The district court correctly remanded under CAFA's mandatory exceptions. ............................................................................................37

VII. The order granting leave to amend provides no basis for reversal. ....38

CONCLUSION .......................................................................................40

# TABLE OF AUTHORITIES

## CASES

*Allen v. Amsterdam*,
132 F.4th 1065 (8th Cir. 2025)................................................................ 12, 15, 40

*Bell v. Allstate Life Insurance Co.*,
160 F.3d 452 (8th Cir. 1998)...............................................................................39

*Foman v. Davis*,
371 U.S. 178 (1962)..............................................................................................39

*Grupo Dataflux v. Atlas Glob. Grp., L.P.*,
541 U.S. 567 (2004)..............................................................................................28

*Hargett v. RevClaims, LLC*,
854 F.3d 962 (8th Cir. 2017)....................................................................... 12, 34

*Hargis v. Access Capital Funding, LLC*,
674 F.3d 783 (8th Cir. 2012)....................................................................... 12, 33

*Highway Construction Co. v. McClelland*,
15 F.2d 187 (8th Cir. 1926).................................................................................15

*Hood v. Gilster-Mary Lee Corp.*,
785 F.3d 263 (8th Cir. 2015)..................................................................................8

*In re Atlas Van Lines, Inc.*,
209 F.3d 1064 (8th Cir. 2000)..............................................................................15

*In Touch Concepts, Inc. v. Cellco Partnership*,
788 F.3d 98 (2d Cir. 2015).....................................................................................35

*Leflar v. Target Corp.*,
57 F.4th 600 (8th Cir. 2023)...........................................................................7, 38

*Louisiana v. Am. Nat. Prop. Cas. Co.*,
746 F.3d 633 (5th Cir. 2014)...................................................................... 25, 27

*M & B Oil, Inc. v. Federated Mutual Insurance Co.*,
　66 F.4th 1106 (8th Cir. 2023) ..................................................................8

*Nichols v. 300 M Street Development Group*,
　783 F. Supp. 3d 273 (D.D.C. 2025) ...................................... 30, 31

*Robust Missouri Dispensary 3, LLC v. St. Louis County*,
　721 S.W.3d 135 (Mo. 2025) ...................................................................9

*Royal Canin U.S.A., Inc. v. Wullschleger*,
　604 U.S. 22 (2025) ................................................................. passim

*Simms v. Imperial Woodpecker*, LLC,
　2026 WL 1669105 (C.D. Cal. June 9, 2026) ...............................23

*St. Paul Mercury Indem. Co. v. Red Cab Co.*,
　303 U.S. 283 (1938) ................................................................. 25, 34

*Westerfeld v. Indep. Processing, LLC*,
　621 F.3d 819  (ci (8th Cir. 2010) ......................................................37

*Wullschleger v. Royal Canin U.S.A., Inc.*,
　75 F.4th 918 (8th Cir. 2023) ................................................... passim

## STATUTES

28 U.S.C. § 1332(d)(4) .................................................................. passim

## OTHER AUTHORITIES

S.Rep. No. 109–14, at 43 (2005), *reprinted in* 2005 U.S.C.C.A.N. 3, 41 ........... i, 37

# ISSUES PRESENTED

1. Whether the district court correctly held that Plaintiffs' Second Amended Complaint, filed with leave of court after removal, superseded the First Amended Complaint and controlled the CAFA jurisdictional analysis.

> *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22 (2025);
>
> *Wullschleger v. Royal Canin U.S.A., Inc.*, 75 F.4th 918 (8th Cir. 2023);
>
> *Allen v. Amsterdam*, 132 F.4th 1065 (8th Cir. 2025);
>
> *In re Atlas Van Lines, Inc.*, 209 F.3d 1064 (8th Cir. 2000).

2. Whether 28 U.S.C. § 1332(d)(7) freezes a superseded class definition in place after removal or instead fixes the date for measuring the citizenship of class members as defined by the operative complaint.

> 28 U.S.C. § 1332(d)(7);
>
> *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22 (2025);
>
> *Wullschleger v. Royal Canin U.S.A., Inc.*, 75 F.4th 918 (8th Cir. 2023).

3. Whether CAFA's local-controversy and home-state exceptions required remand once the operative Second Amended Complaint limited the proposed plaintiff class to Missouri citizens.

> 28 U.S.C. § 1332(d)(4)(A)–(B);
>
> *Westerfeld v. Independent Processing, LLC*, 621 F.3d 819 (8th Cir. 2010);
>
> *Hood v. Gilster-Mary Lee Corp.*, 785 F.3d 263 (8th Cir. 2015);
>
> *Leflar v. Target Corp.*, 57 F.4th 600 (8th Cir. 2023).

## APPELLEES' STATEMENT OF THE CASE

**A.  Plaintiffs filed a Missouri-law class action challenging Defendants' retention of an unlawful Missouri tax.**

On June 13, 2025, Plaintiffs filed this putative class action in the Circuit Court of Jackson County, Missouri, alleging Missouri-law claims arising from Defendants' collection of a 3% county-wide marijuana sales tax. (App. 23-30; R. Doc. 1-1 at 4-11). Plaintiffs asserted claims under Missouri law for unjust enrichment, money had and received, and violation of the Missouri Merchandising Practices Act. *Id*.

Just over a month later, on July 22, 2025, the Missouri Supreme Court held that counties could *not* impose that tax on sales occurring within incorporated areas. *Robust Missouri Dispensary*, 721 S.W.3d 135.

Thereafter, on August 20, 2025, Plaintiffs amended their Complaint to include the holding from *Robust Missouri Dispensary*, and to add five additional defendant dispensaries. (App. 54-74; R. Doc. 1-1 at 35–55).

**B.  Defendants removed under CAFA, and the district court initially allowed limited jurisdictional discovery on class-member citizenship.**

On September 19, 2025, Defendant Grassroots OpCo Mo, LLC, removed under CAFA. (App. 12; R. Doc. 1). Plaintiffs moved to remand, invoking CAFA's local-controversy and home-state exceptions. (App. 124; R. Doc. 6). The district court initially found that Defendants had adequately alleged CAFA jurisdiction and that Plaintiffs had not yet shown by a preponderance of the evidence that more than

two-thirds of the proposed plaintiff class were Missouri citizens. (App. 151–158; R. Doc. 24 at 5–12). Rather than deny remand outright, the district court allowed limited jurisdictional discovery regarding plaintiff-class citizenship. (App. 158-160; R. Doc. 24 at 12-14).

At that point, the only unresolved issue for the CAFA exceptions was whether Plaintiffs could show the citizenship of the proposed plaintiff class. The district court had already found the remaining elements of the local-controversy and home-state exceptions satisfied or otherwise uncontested. (App 153-158, R. Doc. 24 at 9-12).

**C.** **Plaintiffs obtained leave to file a Second Amended Complaint narrowing the plaintiff class to Missouri citizens.**

While jurisdictional discovery was pending, Plaintiffs sought leave to file a Second Amended Complaint narrowing the proposed plaintiff class. (App. 161; R. Doc. 27). The proposed amendment did not add claims, add defendants, or alter the underlying facts. It simply narrowed the plaintiff class to Missouri citizens as of the date the original petition was filed. (*Id.*)

The district court granted leave under Rule 15(a)(2). (App. 196; R. Doc. 31). It held that Defendants had not shown undue delay, bad faith, prejudice, or futility. (App. 199; R. Doc. 31 at 4). The district court recognized that Plaintiffs sought to form a class of Missouri citizens to challenge Missouri dispensaries under Missouri law. (*Id.*) It further recognized that Plaintiffs were the masters of their complaint and

could control the claims and parties included in the suit beyond the time the first complaint was filed. (*Id.*) *See Royal Canin*, 604 U.S. at 35.

The operative Second Amended Complaint defines the plaintiff class as:

> "All persons who, as of June 13, 2025, were citizens of the State of Missouri, and who, during the period from December 8, 2022 to the present, purchased adult-use marijuana from any Defendant Dispensary in the state of Missouri and were charged and paid a 3% county-wide sales tax that has been held unconstitutional by the Missouri Supreme Court."

(App. 207; R. Doc. 32 at 7).

Thus, the Second Amended Complaint did *not* change anyone's citizenship. It changed the proposed class definition. In other words, it changed who Plaintiffs seek to represent, not the citizenship of any person after filing.

**D.      The district court remanded under CAFA's mandatory exceptions.**

After the Second Amended Complaint was filed, Plaintiffs renewed their motion to remand. (App. 222-229; R. Doc. 33). The district court granted remand. *See* (App. 230-242; R. Doc. 36).

The district court first rejected Plaintiffs' argument that minimal diversity was necessarily lacking because the defendant class was not *expressly* limited to Missouri citizens. (App. 234; R. Doc. 36 at 5). But that did not end the analysis. The court then considered CAFA's mandatory local-controversy and home-state exceptions. (App. 241-242; R. Doc. 36 at 12-13). Because the Second Amended Complaint limits the plaintiff class to Missouri citizens, and because the court had already found

4

the remaining exception elements satisfied, the court held that CAFA required remand. (App. 242; R. Doc. 36 at 13).

The district court correctly framed the central issue: whether CAFA jurisdiction should be determined based on the Second Amended Complaint, which is the operative complaint, or the First Amended Complaint, which was operative at the time of removal but has since been superseded. Applying *Royal Canin*, the court held that the Second Amended Complaint controlled as to *who* remained in the putative class, while their citizenship should be measured as of the date of the original Petition. The court therefore remanded under 28 U.S.C. § 1332(d)(4).

## SUMMARY OF THE ARGUMENT

The remand order should be affirmed.

First, *Royal Canin* controls. The Supreme Court held that when a plaintiff amends her complaint after removal, "a federal court's jurisdiction depends on what the new complaint says." 604 U.S. at 30. That rule was not limited to federal-question cases. The Court explained that jurisdiction follows from "the operative pleading," *id*. at 35–36, that amended pleadings can alter jurisdiction, *id*. at 34–39, and that the rule applies in removed cases because jurisdiction depends on the case "as it will actually be litigated," *id*. at 38–39. The Supreme Court also cited CAFA's § 1332(d)(7) as an example of Congress's recognition that amended pleadings can affect federal jurisdiction. *Id*. at 34.

Second, *Royal Canin* is especially compelling here because it affirmed this Court's own decision in *Wullschleger*. In *Wullschleger*, this Court held that a post-removal amendment eliminating the basis for federal jurisdiction required remand because an amended complaint supersedes the original and because changes to the "alleged state of things" can create or destroy federal jurisdiction. 75 F.4th at 922–24. After *Royal Canin*, this Court again reiterated in *Allen v. Amsterdam* that an amended complaint supersedes the original and renders it without legal effect. *Allen v. Amsterdam*, 132 F.4th 1065, 1068 (8th Cir. 2025).

Third, § 1332(d)(7) does not create a CAFA exception to the operative-pleading rule. The statute directs courts to determine the "[c]itizenship of the members of the proposed plaintiff classes" as of a specified date. 28 U.S.C. § 1332(d)(7). It addresses when citizenship is measured; it does not say that a superseded class definition remains operative after amendment. Nor does it say that a federal court must ignore a court-authorized amended complaint. *Id.* Appellants' "lock-in" theory adds words Congress did not use.

The text confirms that point. Section 1332(d)(7) expressly refers to the "complaint or amended complaint," and its second clause recognizes that a case not initially subject to federal jurisdiction may later become subject to federal jurisdiction through "an amended pleading, motion, or other paper" indicating CAFA jurisdiction. *Id*. Congress therefore did not command courts to look only to the

6

original complaint or to freeze the first pleading that supported removal. It expressly contemplated that amended pleadings may matter.

*Royal Canin* read the statute the same way, citing § 1332(d)(7) as an example of Congress "providing that an 'amended complaint' in a proposed class action may create '[f]ederal jurisdiction'" and explaining that, "[i]n such statutes, Congress conceives of amendments as having the potential to alter jurisdiction." 604 U.S. at 34. Section 1332(d)(7) therefore supports the district court's approach: the operative amended complaint defines the proposed plaintiff class, and the statute supplies the date for measuring the citizenship of the members of that class.

Fourth, Appellants' cases do not control. *Hargis* involved a post-removal attempt to reduce the amount in controversy, a circumstance *Royal Canin* expressly distinguished. *Hargett* predated *Royal Canin*, did not apply its operative-pleading rule, and did not hold that CAFA contains a special anti-supersession rule. To the extent Appellants read *Hargett* more broadly, that reading cannot survive *Royal Canin*.

Fifth, once the operative Second Amended Complaint limited the plaintiff class to Missouri citizens, CAFA's mandatory exceptions applied. The district court had already found the other elements satisfied. Under § 1332(d)(4), the district court was required to decline jurisdiction. *Leflar v. Target Corp.*, does not authorize a

federal court to retain a case when CAFA's statutory exceptions are met. 57 F.4th 600 (8th Cir. 2023).

Finally, Appellants' appeal to CAFA's general purpose cannot override CAFA's text. CAFA expanded federal jurisdiction over interstate class actions, but Congress also created mandatory exceptions for local controversies and home-state disputes. Those exceptions are not loopholes; they are part of CAFA's design. Section 1332(d)(4) provides that a district court "shall decline to exercise jurisdiction" when the statutory requirements are met. Thus, even if CAFA is generally construed to favor federal jurisdiction, that principle has no role once the mandatory exceptions apply. Congress chose a federal forum for interstate class actions and a state forum for genuinely local ones. This case falls on the local side of that line.

## STANDARD OF REVIEW

This Court reviews questions of subject-matter jurisdiction *de novo*. *Wullschleger*, 75 F.4th at 921; *M & B Oil, Inc. v. Federated Mutual Insurance Co.*, 66 F.4th 1106, 1108 (8th Cir. 2023). The interpretation of CAFA and § 1332(d)(7) is likewise reviewed *de novo*. *See Hood v. Gilster-Mary Lee Corp.*, 785 F.3d 263, 265 (8th Cir. 2015).

**ARGUMENT**

## I. Introduction

This case belongs in Missouri state court. It is a local Missouri dispute brought by Missouri consumers under Missouri law against Missouri marijuana dispensaries concerning Missouri marijuana taxes that the Missouri Supreme Court held counties had no authority to impose on sales occurring in incorporated areas. *Robust Missouri Dispensary 3, LLC v. St. Louis County*, 721 S.W.3d 135 (Mo. 2025). The equities are straightforward. The dispensaries challenged the legality of the tax and prevailed. Having established that the tax was unlawfully imposed, they now seek to keep the money paid by the consumers who *actually paid it*. In practical effect, Appellants seek to convert an unlawfully collected tax into a private windfall for themselves.[1]

After removal under CAFA, Plaintiffs sought and obtained leave to file a Second Amended Complaint that narrowed the proposed plaintiff class to persons who, as of the date the original petition was filed, were Missouri citizens. The district court then did what *Royal Canin U.S.A., Inc. v. Wullschleger* requires: it looked to the operative complaint to determine the case as it would actually be litigated. 604 U.S. 22, 30, 35–39 (2025). Because the Second Amended Complaint limits the

---

[1] Appellants' position is difficult to square with their own successful challenge to the tax. When the dispensaries saw a potential windfall, the tax was unlawful. But when the consumers who *actually paid* the unlawful tax seek to recover that money for themselves, Appellants insist the proceeds somehow belong to them. That position has no basis in law or equity.

plaintiff class to Missouri citizens, and because the district court had already found the remaining elements of CAFA's local-controversy and home-state exceptions satisfied, the court remanded.

That ruling also falls squarely within *Royal Canin's* core distinction. Plaintiffs did not change any jurisdictional facts on the ground. They did not allege that anyone changed citizenship after filing, did not manipulate domicile, and did not reduce the amount in controversy. They amended the pleading to narrow the proposed plaintiff class—i.e., to remove from the case the claims of persons Plaintiffs no longer seek to represent. For CAFA purposes, the class definition identifies the proposed plaintiff class whose citizenship is measured and whose claims are being litigated. Narrowing that definition is therefore a change to the "*alleged* state of things," not the "state of things." That is exactly the kind of pleading amendment *Royal Canin* and *Wullschleger v. Royal Canin U.S.A., Inc.*, 75 F.4th 918 (8th Cir. 2023), hold can alter federal jurisdiction.

And Plaintiffs had sound reasons to narrow the class apart from the jurisdictional consequences of doing so. This is a Missouri tax case arising from Missouri transactions, involving Missouri-licensed dispensaries, brought under Missouri law, and following a Missouri Supreme Court decision about the limits of Missouri local taxing authority. The named Plaintiffs are Missouri citizens, and they chose to represent the Missouri citizens whose claims most closely mirror their own.

That narrowing promotes cohesion, manageability, and adequacy; avoids unnecessary disputes involving tourists or out-of-state purchasers; and ensures that the case proceeds as the Plaintiffs intended. The fact that the amendment also affects CAFA jurisdiction does not make it improper. Under *Royal Canin*, Plaintiffs remain masters of their complaint, and their control over claims *and parties* extends beyond the initial pleading.

Appellants' argument depends on converting § 1332(d) (7)—a timing rule for measuring class-member citizenship—into a rule freezing a superseded class definition in place after a court-authorized amendment. The statute says no such thing. The operative complaint answers the "*who*" question: *who* remains in the proposed plaintiff class after amendment. Section 1332(d)(7) answers only the "*when*" question: as to the persons included in that operative class definition, what date is used to determine their citizenship. Here, the Second Amended Complaint defines the class to include only people who were Missouri citizens as of June 13, 2025. Plaintiffs therefore did not ask the district court to determine class membership under a superseded pleading, or to rely on post-removal changes in citizenship. They asked the court to apply the operative class definition and then measure citizenship as of the relevant statutory date. That is exactly what § 1332(d)(7) requires, and *Royal Canin* forecloses Appellants' premise that a federal court may continue to assess jurisdiction based on a pleading that has been superseded.

11

Nor can Appellants avoid *Royal Canin* by calling this a CAFA case. *Royal Canin* did not announce an unfamiliar rule and ask this Court to import it into this Circuit. It affirmed this Court's *own decision* in *Wullschleger v. Royal Canin U.S.A., Inc.*, 75 F.4th 918 (8th Cir. 2023), which held that a post-removal amendment can destroy federal jurisdiction because an amended complaint supersedes the prior complaint and changes the "alleged state of things." *Id*. at 922–24. After *Royal Canin*, this Court reiterated the same supersession rule in *Allen v. Amsterdam*, 132 F.4th 1065, 1068 (8th Cir.), cert. denied sub nom. *Brooks v. Allen*, 146 S. Ct. 886 (2025).

Appellants' contrary authorities do not control. *Hargis v. Access Capital Funding, LLC* addressed a post-removal attempt to reduce the amount in controversy—the precise diversity-specific exception *Royal Canin* recognized. 674 F.3d 783, 789–90 (8th Cir. 2012); *Royal Canin*, 604 U.S. at 38 n.8. And *Hargett v. RevClaims, LLC*'s statement that redefining a class to trigger the local-controversy exception "seems to violate" § 1332(d)(7), 854 F.3d 962, 967 (8th Cir. 2017), was an observation made before *Royal Canin* and without the benefit of the Supreme Court's holding that, after amendment, jurisdiction depends on "what the new complaint says." *Royal Canin*, 604 U.S. at 30.

The district court correctly applied *Royal Canin* and correctly remanded under CAFA's mandatory exceptions. This Court should affirm.

**II.  The Second Amended Complaint is the operative pleading, and federal jurisdiction must be assessed from that pleading.**

The district court correctly held that the Second Amended Complaint controls the CAFA analysis.

**A.  *Royal Canin* holds that jurisdiction depends on the operative amended complaint.**

*Royal Canin* provides the starting point and largely supplies the answer. There, the plaintiff filed suit in Missouri state court, the defendants removed, and the plaintiff later amended the complaint to remove the federal-law allegations that supplied federal jurisdiction. 604 U.S. at 25–30. The Supreme Court held that the case had to return to state court. *Id*. at 30, 44.

The Court's holding was direct: "When a plaintiff amends her complaint following her suit's removal, a federal court's jurisdiction depends on what the new complaint says." *Id*. at 30. Because the amended complaint eliminated the federal-law claims that enabled removal, "the court's power to decide the dispute dissolve[d]." *Id*.

That rule did not arise from a narrow quirk of supplemental jurisdiction. The Court grounded its reasoning in a broader procedural principle: "jurisdiction follows from (and only from) the operative pleading." *Id*. at 35–36. An amended complaint supersedes the old complaint; the "original pleading no longer performs any function in the case." *Id*. at 35–36. Changes in parties or claims "effectively remake the suit,"

13

including "its jurisdictional basis." *Id*. at 36. Thus, "the reconfiguration accomplished by an amendment may bring the suit either newly within or newly outside a federal court's jurisdiction." *Id*.

The Supreme Court also emphasized that this rule applies in removed cases. In removed cases, just as in original cases, "jurisdiction follows the operative pleading" because the rule "ensures that the case, as it will actually be litigated, merits a federal forum." *Id*. at 38–39. The Court therefore rejected the "once removed, always retained" approach that Appellants advance here.

**B.** ***Royal Canin* affirmed this Court's own rule in *Wullschleger*.**

*Royal Canin* is particularly important because it affirmed this Court's decision in *Wullschleger*. This is not a situation where Appellees ask the Eighth Circuit to import an unfamiliar Supreme Court rule into this Circuit. The Supreme Court affirmed the Eighth Circuit's *own* operative-pleading rule.

In *Wullschleger*, this Court held that after amendment, jurisdiction was governed by the amended complaint, not the original complaint. 75 F.4th at 922–24. The defendants argued that courts should focus on the original complaint because amendments after removal do not matter. This Court rejected that argument: it "runs into our rule" that "an amended complaint [supersedes] an original complaint and renders the original complaint without legal effect." *Id*. at 922 (quoting *In re Atlas*

*Van Lines, Inc.*, 209 F.3d 1064, 1067 (8th Cir. 2000)). This Court added that "[i]t makes no difference whether the case ends up in federal court through removal." *Id*.

The Court then reaffirmed *Highway Construction Co. v. McClelland*, where the Eighth Circuit held nearly a century ago that if a plaintiff voluntarily changes his pleading so that the federal court no longer has jurisdiction, "it becomes the duty of the court to remand the case, if it be a removed case." 15 F.2d 187, 188 (8th Cir. 1926) (per curiam); *see Wullschleger*, 75 F.4th at 922, 924.

The Supreme Court affirmed that reasoning. *Royal Canin*, 604 U.S. at 30, 35–39. Appellants therefore cannot characterize *Royal Canin* as an out-of-circuit disruption of Eighth Circuit law. It is the Supreme Court's *affirmance* of Eighth Circuit law.

**C.  The Eighth Circuit has reaffirmed the same supersession rule after *Royal Canin*.**

After *Royal Canin*, this Court reiterated the supersession principle in *Allen v. Amsterdam*, 132 F.4th 1065 (8th Cir. 2025). There, the Court stated: "In our Circuit, '[i]t is well-established that an amended complaint supersedes an original complaint and renders the original complaint without legal effect.'" *Id*. at 1068 (quoting *In re Atlas Van Lines*, 209 F.3d at 1067 ).

Even Judge Loken's dissent in *Allen* recognized the breadth of *Royal Canin*: "When federal jurisdiction is at issue, the amended complaint is nearly always

15

controlling." *Id*. at 1071 (Loken, J., dissenting) (citing *Royal Canin*, 604 U.S. at 31–38).

Thus, the operative-pleading principle is not debatable in this Circuit. The Second Amended Complaint superseded the First Amended Complaint. Neither the original nor the First Amended Complaint defines the plaintiff class for purposes of the case as it will be litigated. The district court properly evaluated CAFA jurisdiction based on the Second Amended Complaint.

## III. Section 1332(d)(7) does not freeze a superseded class definition in place.

Appellants' principal statutory argument is that § 1332(d)(7) "locks in" class citizenship once CAFA jurisdiction has been established. In one limited sense, that is true: citizenship is measured as of the relevant statutory date, and later changes in domicile do not matter. But that is not what happened here. Plaintiffs did not ask the court to consider post-removal changes in citizenship. They amended the class definition to identify who remains in the proposed plaintiff class, and § 1332(d)(7) then supplies the date for measuring the citizenship of those persons. Appellants' error is treating a rule that locks in the timing of the citizenship inquiry as a rule that locks in a superseded class definition. The statute does not do that.

### A. Section 1332(d)(7) is a timing rule, not an anti-supersession rule.

Section 1332(d)(7) provides:

"Citizenship of the members of the proposed plaintiff classes shall be determined for purposes of paragraphs (2) through (6) as of the date of

filing of the complaint or amended complaint, or, if the case stated by the initial pleading is not subject to Federal jurisdiction, as of the date of service by plaintiffs of an amended pleading, motion, or other paper, indicating the existence of Federal jurisdiction."

28 U.S.C. § 1332(d)(7).

That language answers a *timing* question: when is the citizenship of class members measured? It does not answer a pleading-supersession question: which complaint *defines* the proposed plaintiff class after amendment? The ordinary rule, reaffirmed by *Royal Canin*, answers that question. An amended complaint supersedes the prior complaint, and jurisdiction is assessed based on the operative pleading.

The text confirms the point. Section 1332(d)(7) does not say that courts must look only to the original complaint. It says the opposite. Congress expressly referred to the "complaint or amended complaint." Congress then added a second clause recognizing that, when "the case stated by the initial pleading is not subject to Federal jurisdiction," federal jurisdiction may later become apparent through "an amended pleading, motion, or other paper." *Id.*

Thus, Congress expressly contemplated that CAFA jurisdiction may depend on pleadings and papers filed after the initial complaint. The statute does not freeze the original class definition forever. Nor does it say that the first pleading establishing CAFA jurisdiction remains operative for all later jurisdictional

purposes. It simply identifies the date as of which courts determine the citizenship of the members of the proposed plaintiff class.

*Royal Canin* read § 1332(d)(7) the same way. In explaining Congress's "usual view of how amended pleadings can affect jurisdiction," the Supreme Court cited § 1446(b)(3), which allows removal after "an amended pleading" first establishes federal jurisdiction, and then cited § 1332(d)(7) as "similarly providing that an 'amended complaint' in a proposed class action may create '[f]ederal jurisdiction.'" *Royal Canin*, 604 U.S. at 34. The Court drew the conclusion that matters here: "In such statutes, Congress conceives of amendments as having the potential to alter jurisdiction." *Id*.

That statement is fatal to Appellants' reading. If Congress conceived of amended complaints as capable of altering jurisdiction under § 1332(d)(7), then § 1332(d)(7) cannot be read as a one-way ratchet that allows amendments to create CAFA jurisdiction but forbids them from destroying it. *Royal Canin* and *Wullschleger* rejected that kind of asymmetry.

"It makes little sense," this Court observed, "to apply a one-way forum-manipulation ratchet in favor of federal jurisdiction, but not the other way around." *Wullschleger*, 75 F.4th at 924. Amendments can create jurisdiction, and amendments can destroy jurisdiction, because jurisdiction follows the operative pleading.

The best reading of § 1332(d)(7) is therefore straightforward: the operative complaint defines the proposed plaintiff class, and § 1332(d)(7) tells the court when to measure the citizenship of the members of that class. Here, the operative Second Amended Complaint defines the plaintiff class as persons who were Missouri citizens as of June 13, 2025. That is also the date which the citizenship of those class members is measured since that is also the date on which the original Complaint was filed indicating the existence of CAFA jurisdiction.

In short, Plaintiffs did not ask the district court to consider post-removal changes in domicile or any other changed jurisdictional *fact*. They amended the pleading to identify the proposed plaintiff class whose claims they intend to litigate. Section 1332(d)(7) allows that sequence. *Royal Canin* requires courts to honor it. And *Wullschleger* explains why: changing the operative pleading changes the "alleged state of things," not the facts on the ground.

Appellants' contrary reading adds words Congress did not use. Section 1332(d)(7) does not say that the class definition must remain fixed for all jurisdictional purposes after amendment. It does not transform the first removable pleading into a permanently operative complaint. And it does not require a federal court to disregard a later, court-authorized amended complaint that supersedes what came before.

In sum, § 1332(d)(7) fixes the date for measuring citizenship; it does not freeze a superseded class definition in place.

**B.** ***Royal Canin* cited § 1332(d)(7) as an example of Congress treating amended pleadings as jurisdiction-changing events.**

Appellants argue that *Royal Canin* did not involve CAFA. True, but immaterial. The Supreme Court expressly cited § 1332(d)(7) while explaining Congress's "usual view of how amended pleadings can affect jurisdiction." 604 U.S. at 34.

That discussion matters. The Court explained that "an amendment can wipe the jurisdictional slate clean, giving rise to a new analysis with a different conclusion." *Id*. It then cited several statutes reflecting that principle, including § 1446(b)(3) and § 1332(d)(7). *Id*. The Court described § 1332(d)(7) as "similarly providing that an 'amended complaint' in a proposed class action may create '[f]ederal jurisdiction.'" *Id*.

That statement defeats Appellants' premise. The Supreme Court understood § 1332(d)(7) as part of Congress's broader recognition that amended pleadings can affect jurisdiction. It did not read § 1332(d)(7) as freezing jurisdiction based on a superseded complaint.

Nor is there any reason to convert § 1332(d)(7) into a one-way ratchet. *Royal Canin* repeatedly rejects one-way jurisdictional rules that preserve federal jurisdiction while preventing amendments from destroying it. Amendments can

20

create jurisdiction, and amendments can destroy jurisdiction. *Id*. at 34–39. Section 1332(d)(7) fits that framework.

The developing post-*Royal Canin* CAFA cases confirm the same point. Appellants try to distinguish those cases because they involved different CAFA provisions or different procedural postures. But the relevant question is not whether those cases involved the same amendment or the same CAFA exception. The relevant question is whether CAFA is exempt from Royal Canin's operative-pleading rule. *Faulk* and *Zurbriggen* both say no.

In *Faulk v. JELD-WEN, Inc*., the Ninth Circuit held that "*Royal Canin's* rule also governs when a plaintiff amends their class complaint and excises the claims necessary for CAFA's minimal diversity standards to apply." 159 F.4th 618, 620 (9th Cir. 2025). Appellants emphasize that the plaintiffs in *Faulk* eliminated class allegations entirely, whereas Plaintiffs here narrowed the class definition in a way that triggered CAFA's mandatory exceptions. But that distinction does not help them. *Faulk's* significance is that the Ninth Circuit applied *Royal Canin* to CAFA at all. It did not treat CAFA jurisdiction as fixed forever at removal. It looked to the operative amended complaint and held that, once that pleading eliminated the basis for CAFA jurisdiction, remand was required. *Id*. at 625.

*Zurbriggen v. Twin Hill Acquisition, Inc*., 178 F.4th 1085 (7th Cir. 2026), points the same way. Appellants stress that *Zurbriggen* was originally filed in federal

court and did not involve the local-controversy or home-state exceptions. Again, that is not the point for which the case matters. The Seventh Circuit acknowledged that "*Royal Canin* does not discuss CAFA jurisdiction," but held that "its reasoning is still relevant." *Id*. at 1087. Applying that reasoning, the court explained that an amendment removing parties needed for minimal diversity "would unquestionably change the basis for jurisdiction under CAFA," and that an amendment removing class allegations would have the same effect. *Id*. The court further recognized that the plaintiffs' amended complaint dropping class claims "may have resulted in the district court losing CAFA jurisdiction for some time," because *Royal Canin* teaches that an amended complaint "effectively remake[s] the suit." *Id*. at 1088. And when the plaintiffs later filed another amended complaint restoring CAFA allegations, the operative complaint "effectively re-filed the case as a 'class action,' securing jurisdiction under CAFA." *Id*.

Appellants are therefore right that *Faulk* and *Zurbriggen* are not identical to this case. But they are wrong about why that matters. Neither case suggests that *Royal Canin* applies only when an amendment eliminates a CAFA prerequisite, but not when an amendment triggers CAFA's mandatory exceptions. That distinction appears nowhere in *Royal Canin*. It appears nowhere in § 1332(d)(7). And it cannot be squared with § 1332(d)(4), which provides that the district court "shall decline to

exercise jurisdiction" when the local-controversy or home-state requirements are met.

Indeed, § 1332(d)(7) itself confirms that CAFA's exceptions are part of the same citizenship inquiry. The statute applies to citizenship determinations "for purposes of paragraphs (2) through (6)," which includes § 1332(d)(4). Congress therefore made the citizenship-timing rule applicable both to CAFA's jurisdictional prerequisites and to CAFA's mandatory exceptions. Nothing in that text permits a court to consider an amended pleading when it *creates* CAFA jurisdiction, but ignore an amended pleading when it establishes that § 1332(d)(4) *requires remand*.

A district court applying *Faulk* has recognized that exact point in the local-controversy context. In *Simms v. Imperial Woodpecker*, LLC, 2026 WL 1669105 (C.D. Cal. June 9, 2026), the court denied remand because the plaintiff had not proven that more than two-thirds of the putative class were California citizens. *Id*. at *3–4. But the court expressly noted that, under *Royal Canin* and *Faulk*, "diversity jurisdiction under CAFA is not determined solely at the time of removal," and that courts must "look to the operative complaint, including any post-removal amendments, when determining jurisdiction." *Id*. at *4 n.4. The court then addressed this precise situation: "Had Plaintiff amended his class definition to limit it to California citizens, or should he yet do so, that could trigger the local controversy exception." *Id*. That is exactly what happened here. Plaintiffs amended the operative

complaint to limit the proposed class to Missouri citizens, and that amendment triggered CAFA's mandatory local-controversy and home-state exceptions.

*Estate of B.H. v. Netflix, Inc.*, 2025 WL 3697416 (N.D. Cal. Nov. 10, 2025), is consistent. There, Netflix argued that *Royal Canin* should be confined to supplemental jurisdiction and should not apply to CAFA. *Id*. at *3. The court rejected that argument, explaining that although *Royal Canin* arose in a federal-question/supplemental-jurisdiction posture, "the Supreme Court did not limit the opinion's scope to those sources of jurisdiction," and *Royal Canin's* "fundamental rationale applies equally to CAFA cases." *Id*. The court further held that *Royal Canin* applied where plaintiffs amended by revising the class definition, because the amendment did not involve a post-filing citizenship change or an amount-in-controversy reduction. *Id*. at *4.

*Estate of B.H.* ultimately found CAFA jurisdiction remained because the amended complaint still alleged a global class and the plaintiffs failed to establish a CAFA exception. *Id*. at *5–6. But that only underscores why remand was required here. Plaintiffs' Second Amended Complaint does not allege a global or multistate class. It limits the proposed plaintiff class to Missouri citizens as of the filing date. The same operative-pleading rule that preserved jurisdiction in *Estate of B.H.* requires remand here.

Appellants' contrary rule would make CAFA a one-way ratchet. Amended complaints could create CAFA jurisdiction, restore CAFA jurisdiction, or preserve CAFA jurisdiction—but could never establish that CAFA's mandatory local-controversy and home-state exceptions apply. *Royal Canin* rejects that asymmetry. Once the Second Amended Complaint became the operative pleading, the district court properly looked to that complaint to identify the proposed plaintiff class and then measured the citizenship of that class under § 1332(d)(7). Because all members of the operative proposed plaintiff class are Missouri citizens, and because the other requirements of § 1332(d)(4) were satisfied, remand was mandatory.

### C. Plaintiffs changed the *alleged* state of things, not the state of things.

Appellants cite *Louisiana v. Am. Nat. Prop. Cas. Co*., 746 F.3d 633 (5th Cir. 2014), to invoke the familiar principle that jurisdiction is measured at the time of filing or removal. But that principle addresses changes in jurisdictional *facts*, not changes in the operative pleading.

*Wullschleger* explains the distinction. The "state of things" refers to "the actual facts on the ground." 75 F.4th at 923. If a party moves to another state after filing, that later factual change does not destroy diversity. *Id*. The same is true for later changes to the amount in controversy. *Id*.; *see also St. Paul Mercury Indem. Co. v. Red Cab Co*., 303 U.S. 283, 292 (1938).

But changes to the "alleged state of things" are different. *Wullschleger*, 75 F.4th at 923. A plaintiff can add a federal claim after removal to cure a lack of subject-matter jurisdiction or replace a diverse defendant with a nondiverse one to divest jurisdiction. *Id*. The facts on the ground have not changed, but the operative pleading has. *Id*. Because an amended complaint supersedes the prior complaint, changes to the alleged state of things "can create or destroy federal jurisdiction." *Id*.

That is what happened here. Plaintiffs did not allege that any class member changed citizenship after removal. Plaintiffs did not rely on post-removal changes in domicile. The Second Amended Complaint merely narrows the class to those who were Missouri citizens as of June 13, 2025, the date the original petition was filed. Thus, the amendment defines whose claims Plaintiffs choose to litigate. It does not alter anyone's citizenship after the fact.

That narrowing also served legitimate litigation purposes apart from its jurisdictional consequences. This case concerns a Missouri tax, imposed on Missouri transactions, collected by Missouri-licensed dispensaries, and challenged under Missouri law following a Missouri Supreme Court decision about the limits of Missouri local taxing authority. The named Plaintiffs are Missouri citizens, and they chose to represent the Missouri citizens whose claims most closely mirror their own. Limiting the class in that way promotes cohesion, manageability, and adequacy; avoids unnecessary disputes involving tourists or out-of-state purchasers; and

ensures that the case proceeds as the local Missouri controversy Plaintiffs actually intend to litigate.

Nor does the fact that the amendment affects jurisdiction make it improper. *Royal Canin* confirms that Plaintiffs remain masters of their complaint and that their control over the claims and parties included in the suit extends beyond the initial pleading. 604 U.S. at 35. Here, Plaintiffs exercised that control by narrowing the proposed plaintiff class—removing from the case claims they no longer seek to pursue—not by changing any jurisdictional fact on the ground.

Section 1332(d)(7) therefore fits comfortably with *Royal Canin* and *Wullschleger*. The statute fixes the date for measuring citizenship. And the operative complaint identifies whose citizenship is to be measured.

*Louisiana* does not change that. In *Louisiana*, 746 F.3d 633, the Fifth Circuit held that CAFA jurisdiction continued over individual actions that had been severed from a class action after removal. *Id*. at 635. The question there was whether those severed individual cases needed their own independent jurisdictional basis after the class action had already been removed and after a prior Fifth Circuit panel had already held that CAFA jurisdiction existed at removal. *Id*. at 635–36. The court held they did not. *Id*. at 640.

That is not this case. Plaintiffs did not sever individual cases from a removed CAFA class action. They did not ask the court to preserve jurisdiction over claims

that had once been part of a class action but later became standalone individual cases. And they did not rely on post-removal *factual* developments to alter anyone's citizenship. They filed a court-authorized amended complaint that superseded the prior pleading and narrowed the proposed plaintiff class whose claims Plaintiffs seek to litigate. *Louisiana* did not address that situation.

Nor did *Louisiana* address the effect of a superseding amended complaint under *Royal Canin*. *Louisiana* was decided more than a decade before *Royal Canin* and relied on the broad proposition that "jurisdictional facts are determined at the time of removal, and consequently post-removal events do not affect that properly established jurisdiction." *Id.* at 636–37. *Royal Canin* later explained why that proposition cannot be applied mechanically to amendments that change the operative pleading. The time-of-filing rule governs changes in jurisdictional *facts*—the "state of things." It does not prevent an amended complaint from changing the "*alleged* state of things," including the claims and plaintiff-side claimants included in the suit.

That distinction also answers *Louisiana's* reliance on *Grupo Dataflux*. *Grupo Dataflux* involved a post-filing change in the citizenship of a continuing party. A limited partnership lacked diversity at filing because some of its partners were Mexican citizens, and the Supreme Court held that the later withdrawal of those partners could not cure the original jurisdictional defect. *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 569–70, 575 (2004). The Court emphasized that the

28

purported cure arose "not from a change in the parties to the action, but from a change in the citizenship of a continuing party." *Id*. at 575.

*Royal Canin* expressly limited that kind of reasoning. In footnote 8, the Court explained that the amount-in-controversy rule, like the time-of-filing rule for citizenship, concerns "a fact on the ground"—the value of the suit or the citizenship of a party—rather than "the plaintiff's selection of claims and parties." 604 U.S. at 38 n.8. The Court then cited *Grupo Dataflux* for the concern that "constant litigation" over changing citizenship facts would be wasteful, but immediately made clear that such concerns do not limit "the effect of the plaintiff's decision, as the master of her complaint, *to add or subtract claims or parties*." *Id*. (Emphasis added).

That is the decisive point. Plaintiffs here did not ask the district court to recognize a post-removal citizenship change by a continuing party, as in *Grupo Dataflux*. They amended the operative pleading to narrow the proposed plaintiff class and remove from the case the claims of persons Plaintiffs no longer seek to represent. That is a change to the operative pleading, not a change in jurisdictional facts on the ground.

*Louisiana* is therefore inapposite for a second reason: it did not involve CAFA's mandatory local-controversy or home-state exceptions. Section 1332(d)(4) requires a district court to "decline to exercise jurisdiction" when those exceptions apply. And § 1332(d)(7) expressly governs citizenship determinations "for purposes

of paragraphs (2) through (6)," which includes § 1332(d)(4). Once the Second Amended Complaint became the operative pleading, the district court had to determine the citizenship of the members of that proposed class as defined in that complaint. Because the operative class consists only of persons who were Missouri citizens as of the filing date, and because the other requirements of § 1332(d)(4) were satisfied, remand was mandatory.

Appellants' reliance on *Nichols v. 300 M Street Development Group*, 783 F. Supp. 3d 273 (D.D.C. 2025), is also misplaced. *Nichols* did not involve CAFA's local-controversy or home-state exceptions. Nor did it involve an amended class definition limiting the proposed plaintiff class to citizens of the forum state. The plaintiff there eliminated the class allegations altogether, and the district court treated the practical effect of that amendment as a reduction of the amount in controversy below CAFA's jurisdictional threshold. *Id*. at 278–79. For that reason, the court applied *St. Paul Mercury. Id*.

This case is different. Plaintiffs did not reduce the amount in controversy, disclaim damages, or ask the district court to revisit the value of the suit. They amended the operative class definition, which determines whose citizenship is measured for purposes of § 1332(d)(4). That is not *St. Paul Mercury* territory; it is *Royal Canin* territory.

*Nichols* itself recognized the distinction. The court acknowledged that pre-*Royal Canin* cases applying a broad "nothing after removal matters" rule had been "seriously undermined." *Id*. at 278 n.2. It also explained that a different case might arise if a plaintiff amended after removal to eliminate class allegations in a way that destroyed diversity rather than merely reduced the amount in controversy. *Id*. at 278. In that circumstance, the court suggested, the amendment would not simply reduce the value of the suit under *St. Paul Mercury*; it could instead alter the jurisdictional structure of the case under *Royal Canin*. *Id*.

That is why *Nichols* does not help Appellants. Its holding was limited to an amendment that affected only CAFA's amount-in-controversy requirement while diversity jurisdiction otherwise remained independently satisfied. *Id*. This case involves a different jurisdictional question: whether the operative class definition triggers CAFA's mandatory local-controversy and home-state exceptions. On that question, *Nichols* does not support Appellants. If anything, its reasoning confirms that *Royal Canin* governs amendments that change the operative jurisdictional structure of the case rather than merely reduce the amount in controversy.

*Nichols* therefore does not help Appellants.

**D. Even under Appellants' reading, the Original Petition—not the First Amended Petition—was the first pleading indicating federal jurisdiction.**

Appellants have also suggested that the First Amended Petition was the first pleading "indicating the existence of Federal jurisdiction." Even accepting Appellants' reading of § 1332(d)(7), that assertion is wrong.

The original Petition alleged the same putative class action and the same theories; it simply named a smaller subset of dispensary defendants. Whatever CAFA basis appeared in the First Amended Petition was already apparent from the Original Petition. Nor does Grassroots' later addition as a named defendant change the analysis. The question under § 1332(d)(7) is not when a particular defendant's removal clock began to run. The question is when "the case stated by the initial pleading" first indicated the existence of federal jurisdiction. 28 U.S.C. § 1332(d)(7). The original Petition stated the same putative class action, the same plaintiff class, the same defendant-class theory, and the same Missouri-law claims. The later addition of Grassroots may matter for removal timing, but it does not transform the First Amended Petition into the first pleading indicating CAFA jurisdiction for purposes of measuring proposed class-member citizenship.

Any other reading would create unnecessary confusion. If § 1332(d)(7)'s "amended pleading" language is read defendant-by-defendant, then each newly added or newly served defendant could argue that the date for class citizenship shifts

depending on when that defendant first received a pleading from which it could remove. That is not a single, administrable CAFA snapshot. It is a moving target. Section 1332(d)(7) should not be read to produce that instability, especially when its text provides a straightforward rule: the operative complaint defines the proposed plaintiff class, and citizenship of the members of that class is measured as of the date of the *first* pleading, motion, or other paper indicating the existence of Federal jurisdiction.[2]

## IV. *Hargis* and *Hargett* do not control after *Royal Canin*.

Appellants rely heavily on *Hargis* and *Hargett*. Neither requires reversal.

### A. Hargis involved the amount in controversy, not the operative class definition for CAFA's mandatory exceptions.

In *Hargis*, the plaintiff amended after removal to redefine the class as "only Missouri plaintiffs." 674 F.3d at 789. The Eighth Circuit held that the original complaint controlled the amount-in-controversy determination because it was the operative complaint at the time of removal. *Id*. at 789–90.

---

[2] Appellants' contrary position is also inconsistent with the very rule they ask this Court to apply. Their appeal rests on the premise that later changes in circumstances cannot alter the CAFA citizenship snapshot. But they then rely on a later pleading— the First Amended Petition—as the relevant jurisdictional trigger because it added defendants. They cannot have it both ways. If later developments cannot change the citizenship inquiry, then the later addition of defendants cannot move the citizenship-measurement date from the original Petition to the First Amended Petition. And if amended pleadings do matter, then the Second Amended Complaint matters too.

That holding does not decide this case. *Hargis* involved an attempt to reduce the amount in controversy. *Royal Canin* expressly distinguished that circumstance. The Supreme Court recognized that under *St. Paul Mercury*, later events reducing the amount in controversy do not ordinarily defeat diversity jurisdiction. *Royal Canin*, 604 U.S. at 38 n.8; *St. Paul Mercury*, 303 U.S. at 289, 292.

The district court correctly recognized that *Hargis* falls within that exception. This case does not. Plaintiffs did not merely reduce damages or allege a later amount-in-controversy fact. They filed a court-authorized amended complaint narrowing the plaintiff class—the parties whose claims are asserted. Under *Royal Canin* and *Wullschleger*, that is a change to the *alleged* state of things, and it can alter federal jurisdiction.

### B. Hargett's "seems to violate" observation was not a post-*Royal Canin* holding.

*Hargett* is also distinguishable. There, the Eighth Circuit addressed whether the local-controversy exception applied based on allegations and proof of residency rather than citizenship. 854 F.3d at 965–67. In that context, the Court stated that "the concept of redefining a class to trigger the local-controversy exception seems to violate § 1332(d)(7), which says that for purposes of the local-controversy exception, class citizenship must be determined as of the date of the pleading giving federal jurisdiction." *Id*. at 967.

That statement does not control this case for several reasons.

First, *Hargett* predated *Royal Canin*. It did not apply the Supreme Court's operative-pleading rule because that decision did not yet exist.

Second, *Hargett* did not hold that CAFA contains an anti-supersession rule. Its "seems to violate" language was an observation made in addressing a different problem: the plaintiff's attempt to rely on residency, not citizenship, and the district court's amendment procedure.

Third, to the extent *Hargett* is read to require federal courts to disregard a court-authorized operative amended complaint, that reading cannot survive *Royal Canin*. The Supreme Court held that when a plaintiff amends after removal, jurisdiction depends on "what the new complaint says." 604 U.S. at 30. Lower courts must follow that rule.

Fourth, the Second Amended Complaint here expressly limits the class to those who were Missouri citizens as of the date of the original petition. Plaintiffs are not asking the court to measure citizenship as of some later factual moment. The operative class definition itself incorporates the relevant date.

**C.** **In Touch Concepts and similar pre-Royal Canin authorities do not carry Appellants' burden.**

Appellants also cite *In Touch Concepts, Inc. v. Cellco Partnership*, 788 F.3d 98 (2d Cir. 2015), a similar pre-*Royal Canin* authority. App. Br. 19. That case likewise cannot control. *Royal Canin* abrogated the "once removed, always retained"

approach in the context before it and rejected the one-way ratchet logic underlying those cases. 604 U.S. at 30, 35–39.

In fact, the only circuits to consider *Royal Canin*'s application to CAFA have held that *Royal Canin* applies in CAFA cases. *Faulk v. JELD-WEN, Inc.*, 159 F.4th 618, 620 (9th Cir. 2025); *Zurbriggen v. Twin Hill Acquisition, Inc.*, --- F.4th ----, 2026 WL 1732248 (7th Cir. June 16, 2026). Appellants try to distinguish those cases because the plaintiffs in both eliminated class allegations entirely, while Plaintiffs here narrowed the class to Missouri citizens. But the distinction is not legally meaningful. In all three cases, the operative amended complaint removed the basis for continued federal jurisdiction. *Royal Canin* turns on the operative pleading, not on whether the amendment removes all class allegations or narrows the class in a way that triggers CAFA's mandatory exceptions.

## V. *Royal Canin* applies to CAFA despite CAFA's unique features.

Appellants next argue that CAFA has special rules. Of course it does. CAFA contains a $5 million amount-in-controversy threshold, relaxed minimal-diversity requirements, special citizenship rules for certain unincorporated associations, and mandatory exceptions. *See* 28 U.S.C. § 1332(d). But none of those CAFA-specific provisions says that a superseded complaint remains operative after amendment. None says that § 1332(d)(7) overrides the normal supersession rule. And none says that a plaintiff may never narrow a proposed class after removal.

CAFA's structure actually supports remand. CAFA was designed to bring substantial *interstate* class actions into federal court. *Westerfeld v. Indep. Processing, LLC*, 621 F.3d 819, 822 (8th Cir. 2010) (citing S.Rep. No. 109–14, at 43 (2005), *reprinted in* 2005 U.S.C.C.A.N. 3, 41 (CAFA should be read "with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant."). But Congress also required federal courts to decline jurisdiction over certain genuinely local controversies. 28 U.S.C. § 1332(d)(4). This case is local in every relevant sense: Missouri plaintiffs, Missouri law, Missouri dispensaries, Missouri transactions, and alleged injury arising from a Missouri tax issue decided by the Missouri Supreme Court.

Once the operative complaint limited the plaintiff class to Missouri citizens, CAFA's local-controversy and home-state exceptions did exactly what Congress intended them to do. They returned a genuinely local dispute to state court.

**VI.    The district court correctly remanded under CAFA's mandatory exceptions.**

CAFA's local-controversy exception provides that a district court "shall decline to exercise jurisdiction" when the statutory requirements are met. 28 U.S.C. § 1332(d)(4)(A); *see Westerfeld v. Independent Processing, LLC*, 621 F.3d 819, 822 (8th Cir. 2010). The home-state exception likewise requires the district court to decline jurisdiction when at least two-thirds of the plaintiff class and the primary defendants are citizens of the state where the action was filed. 28 U.S.C. §

1332(d)(4)(B). The party seeking remand under these exceptions must make the required showing by a preponderance of the evidence. *Hood v. Gilster-Mary Lee Corp.*, 785 F.3d 263, 265 (8th Cir. 2015).

The district court found that Plaintiffs had already satisfied the exception elements other than plaintiff-class citizenship. The Second Amended Complaint resolved that remaining issue by limiting the plaintiff class to persons who were Missouri citizens as of June 13, 2025. That means more than two-thirds—indeed, all—members of the proposed plaintiff class are Missouri citizens.

Because CAFA's statutory exceptions apply, remand was mandatory.

Appellants also cite on *Leflar v. Target Corp.*, 57 F.4th 600 (8th Cir. 2023), for the proposition that CAFA cases are not subject to the ordinary anti-removal presumption. But *Leflar* does not hold that federal courts may retain jurisdiction when CAFA's statutory exceptions apply. It simply rejects a presumption against removal in deciding whether CAFA jurisdiction exists. *Id*. at 604. Once the district court determined that § 1332(d)(4) applied, it had no discretion to retain jurisdiction.

## VII.  The order granting leave to amend provides no basis for reversal.

Although Appellants' appeal is directed to the remand order, their theory necessarily challenges the effect of the district court's order granting leave to amend. That order was proper.

Rule 15(a)(2) provides that leave to amend should be freely given when justice so requires. A district court may deny leave only for recognized reasons such as undue delay, bad faith, repeated failure to cure deficiencies, undue prejudice, or futility. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Bell v. Allstate Life Insurance Co.*, 160 F.3d 452, 454 (8th Cir. 1998).

The district court found no basis to deny leave. Plaintiffs did not add new claims or new factual predicates. They simply narrowed the class to Missouri citizens. Appellants did not show prejudice, undue delay, or bad faith. Nor did they show futility. Their only real objection was that the amendment would support remand. But *Royal Canin* confirms that amendments can alter jurisdiction. And the plaintiff's role as master of the complaint includes control over claims *and parties* beyond the first pleading. 604 U.S. at 35.

The district court was also aware of the need to scrutinize amendments designed to defeat jurisdiction. This case is the opposite. Plaintiffs did not add a party to manufacture non-diversity. They excluded potential class members and narrowed the case to Missouri citizens injured by Missouri dispensaries under Missouri law.

The district court acted well within its discretion in granting leave. Once the Second Amended Complaint was filed, it became the operative pleading. The remand order followed.

# CONCLUSION

The district court correctly applied the operative-pleading rule announced by this Court in *Wullschleger*, affirmed by the Supreme Court in *Royal Canin*, and reiterated by this Court in *Allen*. Appellants' contrary position depends on reading § 1332(d)(7) to preserve the jurisdictional effect of a superseded pleading, but the statute does not say that. It fixes the date for measuring class-member citizenship; it does not override the settled rule that an amended complaint supersedes what came before.

Nor did Plaintiffs change the facts on the ground. The Second Amended Complaint did not allege any post-filing change in citizenship, domicile, or amount in controversy. It narrowed the proposed plaintiff class and thereby removed from the case the claims of persons Plaintiffs no longer seek to represent. Because the class definition determines whose citizenship is measured under CAFA, that amendment changed the alleged state of things—the operative plaintiff-side claims and claimants—not the state of things. *Royal Canin* governs precisely that kind of amendment.

Once the operative Second Amended Complaint limited the plaintiff class to Missouri citizens, CAFA's mandatory local-controversy and home-state exceptions applied. The district court had no discretion to retain jurisdiction.

This Court should affirm the district court's remand order.

Respectfully submitted,

SCHERMERHORN LAW, PC
By: /s/ Andrew Schermerhorn
Andrew Schermerhorn
4520 Main Street, Suite 700
Kansas City, Missouri 64111
Telephone: (816) 285-6022
andy@schermlaw.com

THE POPHAM LAW FIRM, PC
Paul D. Anderson
712 Broadway Blvd., #100
Kansas City, Missouri 64105
Telephone: (816) 221-2288
paul@pophamlaw.com
*ATTORNEYS FOR PLAINTIFFS-APPELLEES*

## <u>CERTIFICATE OF COMPLIANCE WITH FEDERAL RULE OF APPELLATE PROCEDURE 32(A)</u>

I hereby certify that this brief complies with the requirements of Fed. R. App. P. 32(a)(5) and (6) because it has been prepared in 14-point Times New Roman, a proportionally spaced font. I further certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 9,167 words, excluding the parts of the brief exempted under Rule 32(a)(7)(B)(iii), according to the count of Microsoft Word.

/s/ Andrew Schermerhorn
Andrew Schermerhorn

# ANTI-VIRUS CERTIFICATE

This brief has been scanned for viruses and found to be virus free.

/s/ Andrew Schermerhorn
Andrew Schermerhorn

## CERTIFICATE OF SERVICE

I hereby certify that on July 17, 2026, I electronically filed the foregoing brief with the Clerk of this Court by using the appellate CM/ECF system. The participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

/s/ Andrew Schermerhorn
Andrew Schermerhorn